**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| DONNAL. E. ANDREWS, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) 1:11-cv-080-SEB-DKL |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**Entry Discussing Complaint for Judicial Review**

Donnal E. Andrews ("Andrews") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. Background**

Andrews applied for DIB and SSI on November 27, 2007, alleging an amended onset date of May 16, 2008.[1] His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted by ALJ Arline Colon via videoconference on February 8, 2010. Andrews was present, accompanied by his attorney. Medical and other records were introduced into evidence. Andrews and a vocational expert testified. The ALJ denied Andrews' applications on February 25, 2010. On December 15, 2010, the Appeals Council denied Andrews' request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008).

---

[1]The ALJ applied an onset date of February 8, 2002, but considered Andrews' eligibility only from the date of a prior decision, September 13, 2005. Although the ALJ should have considered eligibility beginning from the amended onset date of May 16, 2008, Andrews' fiftieth birthday, (R. at 57), her failure to do so does not warrant a remand.

This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Andrews met the insured status requirements of the Act through March 31, 2009; (2) Andrews had not engaged in substantial gainful activity since September 14, 2005; (3) Andrews had the following severe impairments: disorders of the spine, cannabis abuse, opiate dependence, depression, and right knee pain; (4) Andrews did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Andrews had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; he could stand and/or walk for six hours out of eight and could sit for less than six of eight hours; he could occasionally climb ramps and/or stairs as well as ladders, ropes or scaffolds; he must avoid concentrated exposure to hazards such as machinery, heights and slippery or wet surfaces; he could occasionally balance, stoop, kneel, crouch, or crawl; he was limited to simple, repetitive tasks and occasional public interaction; and after learning a job he could work independently with only occasional and routine supervision; (6) Andrews was unable to perform any past relevant work; (7) Andrews was born on May 16, 1958, and was a younger individual on September 14, 2005, and he subsequently changed age category to closely approaching advanced age; (8) Andrews had a limited education and was able to communicate in English; (9) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Andrews was "not disabled," whether or not he had transferable job skills; and (10) considering Andrews' age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Andrews had not been under a "disability" as defined in the Act from September 15, 2005, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C.

§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to make a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, ALJ Colon concluded that although Andrews had severe impairments consisting of disorders of the spine, cannabis abuse, opiate dependence, depression, and right knee pain, he could perform a significant number of light exertional level jobs. Andrews argues that the ALJ's decision is not supported by substantial evidence. More specifically, he argues that the ALJ erred: 1) in finding that Andrews' condition had improved; and 2) by ignoring the treating physician's opinion that Andrews could not work.

3

In a prior decision, a different ALJ, James Norris, concluded that Andrews was eligible for DIB and SSI for a closed period from February 8, 2002, through December 31, 2003. (R. at 10, 76-77). ALJ Norris also determined that after December 31, 2003, through the date of the decision of September 13, 2005, Andrews was capable of performing a significant number of sedentary jobs and was therefore not disabled.

Andrews points out that as of his amended onset date of May 16, 2008, he was no longer in the "younger" age group, having moved into the "closely approaching advanced age" category under the Medical-Vocational Guidelines. According to those guidelines, known as "grids," if Andrews could only perform sedentary work, he must be found disabled as of his 50th birthday. *See* Medical-Vocational Guidelines, Appendix 2 to Subpart P of Part 404, Rule 201.09. In her decision, ALJ Colon stated that "[w]hile the claimant alleges he has gotten no better since the prior decision which limited him to sedentary work, the undersigned finds that the claimant's current objective findings as well as his activities of daily living suggest his condition has improved since his prior decision. Thus, a return to sedentary work is not appropriate." (R. at 18). It is this finding which Andrews contends is erroneous.

Andrews asserts that the ALJ cited to medical records but often did not rely on the medical findings in those records. As an example, Andrews argues that the ALJ erred by inferring from a reference to his "boss" that he was working in November 2007. Not only is 2007 outside the period of time at issue, but Andrews' contention that the reference to "his wife and boss" meant that "his wife is his boss," is not persuasive. (R. at 679). The reference was to Andrews' "wife and boss" appearing to pick him up upon his discharge from a psychiatric hospitalization. *Id.* The charting seems to indicate that there were two people present to take Andrews home. *Id.* Another record cited by Andrews stating that when he was discharged on November 6, 2007, he was "currently unemployed," (R. at 657), does not prove that he had no boss. The next sentence on that chart states that Andrews "works as a plumber off and on." *Id.* Although the usage of the term "boss" is not without ambiguity, the inference apparently drawn by the ALJ was not clearly erroneous.

In finding that Andrews' conditions had improved to the point of his being able to perform light exertional work, ALJ Colon noted that there had been a significant lapse in treatment in 2008. (R. at 17). The lack of treatment was reasonably considered to be inconsistent with an allegation of disabling impairments. *Id.* This evidence, or lack thereof, supported the ALJ's finding that Andrews' condition had improved. The ALJ also noted that in October of 2009, when Andrews fell off his bike, a CT scan of the thoracic and lumbar spines revealed no evidence of acute fracture or dislocation, as well as posterior fusion with intact hardware. *Id.* Upon examination, Andrews was walking well, had no neurological deficits, and reported sleeping well without any pain medication. (R. at 17, 1175).

In addition to the objective evidence, the ALJ considered Andrews' activities of daily living. She noted that Andrews had been able to play pool, drive, work as a plumber off and on, watch television, play cards, travel, ride a bike, and hit his garage door to relieve stress. (R. at 17). Although some of these activities did not require much exertion, it was reasonable for the ALJ to conclude that such activities, combined with the relatively benign current objective evidence, supported a finding that Andrews could perform more than sedentary work. (R. at 18). It was not incumbent on the ALJ to show specifically how Andrews' conditions had improved. Rather, the ALJ was required to "identif[y] supporting evidence in the record and build[] a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). ALJ Colon did so.

Contrary to Andrews' suggestion, the court cannot merely choose to give greater weight to the logic employed by ALJ Norris than that by ALJ Colon. The decision at issue in this case is the one issued by ALJ Colon, not ALJ Norris. As noted by the Commissioner, the amended onset date in this case was three years after the end of the earlier period considered by ALJ Norris. The prior findings are not binding on ALJ Colon. When a claimant's applications are separated in time such that a different conclusion could plausibly be reached, *res judicata* does not apply. *Rucker v. Chater*, 92 F.3d 492 (7th Cir. 1996). "The time period was different, and a different outcome is not necessarily inconsistent." *Id.* at 495.

Andrews contends that both ALJs relied upon "strikingly similar evidence to come to different conclusions." Although ALJ Colon did not, in fact, re-evaluate the same evidence, it is entirely possible for two fact-finders to come to different conclusions even when considering the same evidence. The only question faced by the court is whether the decision of ALJ Colon is supported by substantial evidence. If her view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). Andrews' first challenge to the ALJ's decision is not persuasive.

Andrews next argues that the ALJ ignored the opinion of treating physician Dr. Caraco. Dr. Caraco reported that Andrews had been under her care for back pain caused by a back injury. (R. at 795, Ex. B8F at 22). Dr. Caraco described it as a work-related crush injury, stating that Andrews "continues to be disabled from this injury and can not work. He is under ongoing treatment for the pain related to his injury." *Id.* In reference to the opinion of Dr. Caraco, the ALJ noted that "medical source statements which indicate the claimant is disabled and cannot work or cannot bend or lift are inconsistent with the objective evidence and are thus granted little weight." (R.

at 17, citing Ex. B8F at 22, 30-31).[2] The ALJ further noted that "the determination or decision of disability is an administrative finding that is expressly reserved to the Commissioner." (R. at 17-18). This finding was proper. *See Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'"); 20 C.F.R. §§ 404.1527(e) and 416.927(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

In addition, Dr. Caraco's statements were made on May 6, 2006. Andrews' amended onset date is May 16, 2008. As noted by the ALJ, Andrews "admitted to no treatment or medication for some time due to his own lack of motivation in determining his Medicaid coverage." (R. at 17). This lapse of treatment and medication occurred in 2008. Andrews points to no treating physician opinions, including that of Dr. Caraco, during the relevant period of time that were ignored by the ALJ.

In determining Andrews' RFC, the ALJ properly relied on the findings of the state agency physicians who reviewed the record in early 2008. (R. at 18, 1055-62, 1168). As noted above, the court's role in this case is not to attempt a *de novo* determination of Andrews' entitlement to benefits. The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence. . .". *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The court cannot reweigh the evidence, including the opinions of treating and non-examining physicians. In this case, even if the court might have weighed the evidence differently, the ALJ sufficiently articulated her assessment of the evidence to enable the court to "trace the path of [her] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted).

### III. Conclusion

There was no reversible error in the assessment of Andrews' applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Andrews is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 02/16/2012

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[2]The court finds no opinion concerning Andrews' ability to work on pages 30-31 of exhibit B8F.